Hill, P. J.
This is a review under article 78, C. P. A., of the action of the Commissioner of Education, the Board of Regents and the Acting Director of the Motion Picture Division of the State Education Department, in denying a license under section 1082 of the Education Law to permit a motion picture entitled “ Amok ” to be shown in this State. The reasons given in the decision are “ indecent ”, “ immoral ”, “ tends to corrupt morals ”, “ tends to incite to crime ”. The film is the French version of a portion of a story written by Stefan Zweig. It seems that a Spanish screen version of the story has been approved by respondents. The acting director in his affidavit and on behalf of the respondents describes the picture: “ After preliminary footage designed to emphasize the oppres *716 siveness of the jungle and to introduce Dr. Hoik as a man who, for obscure personal reasons, has banished himself to the jungle to work among the natives, the film portrays a tribal dance at which a native suddenly runs amuck. Just as the excitement is subsiding the leading lady, Mme. Helene Haviland, apparently a lady of wealth and of social position, comes to the doctor’s residence. She explains that she has come to him for reasons of secrecy and offers him a large fee if he will grant her a personal favor. Searching questions by the doctor, taken together with Mme. Haviland’s replies, clearly indicate that the favor would be an illegal abortion and that the truth concerning such abortion must be kept from her husband at whatever cost. With a great show of indignation, the doctor at first refuses her request, but later indicates that he might be persuaded to illegally abort her for considerations other than pecuniary. The conversations and actions of the doctor convey the impression that the price for the abortion would be an adulterous relationship between-them. Mme. Haviland, offended, leaves with her chauffeur. Further developments in the picture bring us the information that Mme. Haviland’s husband has been away for nearly a year and that in the meantime she has had a lover — a young officer, who appeared with her in more than one scene. Her perturbation and desire for haste and secrecy stem from the fact that she has received a cablegram informing her that her husband is unexpectedly returning the following day. Further scenes occur between the doctor and Mme. Haviland; he shows his infatuation for her and begs to perform the operation but she spurns his offer and goes instead to a native crone, an ‘ herb doctor of evil reputation. Some time later, Dr. Hoik is called to the native woman’s hut and finds Mme.' Haviland dying, evidently because of an illegal abortion; she extracts from him a promise to keep the cause of her death a secret from her husband. On the husband’s arrival the doctor informs him that the cause of death was a heart attack; the husband refuses to believe this claim and announces that he will take the body to Europe for post-mortem. As the casket is being lifted to the deck of the ship Dr. Hoik clandestinely cuts the rope and plunges into the sea with the casket.”
The decision recommended modification - in the following language: “The following eliminations are directed to be made in all prints to be shown in Hew York State.” The court has reviewed the film. The eliminations suggested have to do *717 with the dialogue between the leading man Dr. Hoik and the leading lady Mme. Haviland, also the portion of the picture which shows the woman in extremis after the supposed abortion by Li Wang.
The same theme would be in the picture after the eliminations, for death from an acute''heart attack would not integrate with the portion of the dialogue that remains. Petitioner argues that the theme in this film is no more sordid or gross than in many which have been approved. A standard in matters of this kind is flexible. Stories of clandestine affection and even illicit intercourse are circulated and filmed, and after we pass the stage of believing in the stork, it is generally understood that conception might follow illicit intercourse and if the wronged husband was beyond the seven seas, abortion would be necessary to prevent disclosure through the birth of a child. It is understandable though, that some reviewing bodies would think this film offended, thus there doubtless is some evidence to sustain the finding, and under section 1296 of the Civil Practice Act, the determination should be confirmed.
Heffernan, Brewster, Foster and Bussell, J J., concur.
Determination confirmed, with $50 costs and disbursements. [See 272 App. Div. 842.]